NOT FOR PUBLICATION

**FILED**
JAMES J. WALDRON, CLERK

**JUNE 17, 2009**

U.S. BANKRUPTCY COURT
NEWARK, N.J.

BY: *s/ Ronnie Plasner*
DEPUTY

**UNITED STATES BANKRUPTCY COURT**
**DISTRICT OF NEW JERSEY**

In Re:

**DAWN S. DEWEIL,**

                Debtor.

**COUNSEL FINANCIAL SERVICES, LLC,**
**a Delaware limited liability company,**

                Plaintiff,

   v.

**DAWN S. DEWEIL,**

                Defendant.

Case No.:   07-25825 (DHS)

Adv. No.:   08-01237 (DHS)

Judge: Donald H. Steckroth, U.S.B.J.

**OPINION**

**APPEARANCES:**

Podvey, Sachs, Meanor & Catenacci
Robert K. Scheinbaum, Esq.
One Riverfront Plaza, 8th Floor
Newark, NJ 07102-2720
***Counsel for Plaintiff***
 ***Counsel Financial Services, LLC***

Yablonsky & Associates, LLC
Daniel J Yablonsky, Esq.
1430 Route 23 North
Wayne, NJ 07470
***Counsel for Defendant/Debtor***
 ***Dawn S. Deweil***

**THE HONORABLE DONALD H. STECKROTH, BANKRUPTCY JUDGE**

Before the Court are dueling motions for summary judgment. On March 13, 2008, Counsel Financial Services, LLC (hereinafter the "Plaintiff") filed an adversary complaint against Dawn S. Deweil (hereinafter the "Debtor" or "Defendant") seeking the non-dischargeability of a debt owed to it by the Debtor pursuant to Sections 523(a)(2)(A) and (B) of the Bankruptcy Code. The Debtor moved for summary judgment seeking a determination that: (i) the Plaintiff cannot prove the elements required under Sections 523(a)(2)(A) or (B) and thus, (ii) the complaint should be dismissed. The Plaintiff filed opposition to the Debtor's motion and a cross-motion for summary judgment seeking a determination that: (i) the elements of actual fraud have been met, (ii) the elements of a materially false statement in writing with respect to the Debtor's financial condition have been met, and therefore, (iii) the debt is non-dischargeable under Sections 523(a)(2)(A) and (B).

The Court has jurisdiction over the instant matter pursuant to 28 U.S.C. § 1334 and the Standing Order of Reference from the United States District Court for the District of New Jersey dated July 23, 1984. The motions for summary judgment are core proceedings pursuant to 28 U.S.C. § 157(b)(2)(I). Venue is proper under 28 U.S.C. §§ 1408 and 1409. The following shall constitute the Court's findings of fact and conclusions of law as required by Federal Rule of Bankruptcy Procedure 7052. For the reasons stated hereafter, this Court grants the Debtor's motion for summary judgment and denies the Plaintiff's cross-motion for summary judgment.

**Statements of Fact and Procedural History**

A.  **Defendant's Statement of Facts**

The Debtor failed to pay the entire amount of federal income taxes owed for the 2003 tax period. *Ltr. from Internal Revenue Service Dated Nov. 26, 2008.*[1] From December 2004 to August 2007, The Debtor made monthly payments, typically in the amount of $420, to the Internal Revenue Service ("IRS") to reduce this liability. *Id.*

On May 14, 2004, the Debtor, an attorney, contacted the Plaintiff and requested an application package for a revolving line of credit. *Br. in Supp. of Mot. for Summ. J. (hereinafter "Def's. Br.")*, Ex. A. The Debtor's case load served as collateral for the line of credit. *Def's. Br.*, 4. Specifically, instructions sent with the application stated in part that "(t)he maximum amount of borrowing is based upon our valuation of the firm's contingent and fixed (if any) receivables." *Def's. Br.*, Ex. A.

Two pertinent parts of the Debtor's application for a revolving credit line were a profit and loss statement that listed the Debtor's expenses as $259,372.79 and a case load list that estimated $1,026,348.48 in future net legal fees. *Id.* As part of the application process, the Debtor provided her personal and business financial information and tax returns for the years 2003 and 2004. *Def's. Br.*, Ex. C. The Debtor also filled out an authorization for a background and credit check, which was obtained by the Plaintiff. *Def's. Br.*, Ex. E. In order to confirm the collateral, an attorney was sent to the Debtor's office to review her case load. *Def's. Br.*, Ex. F. After this information was gathered, the Debtor was granted a $100,000.00 loan by the Plaintiff on February 20, 2006. *Def's. Br.*, Ex. C. Around this time, the Debtor's remaining tax liability for the 2003 tax period was approximately $20,000.00. *Ltr. from Internal Revenue Service dated*

---

[1] This letter was provided to the court during oral argument.

*November 26, 2008*.  Thereafter, the Debtor was granted an additional loan of $50,000.00 on May 2, 2006.  *Def's. Br.*, Ex. G.  The Debtor provided her 2005 tax return in late 2006.  *Def's. Br.*, Ex. H.  While making payments on the loans, the Debtor filed for bankruptcy in October of 2007, after she sustained several trial losses with large unpaid expenses and a significant back injury that required surgery.  *Def's. Br.*, Ex. I.

The Plaintiff filed a complaint seeking to have the debt deemed nondischargeable under Sections 523(a)(2)(A) and (B), claiming actual fraud and false financial statements.  *Def's. Br.*, Ex. J.  Since the filing of her answer to the Plaintiff's complaint, the Debtor has given up her private practice and now works for another firm.  *Def's. Br.*, Ex. M.  Although the value of her case load was used as collateral for the loans from the Plaintiff, she no longer has her own case load inventory.  *Id*.

**B.**     **Plaintiff's Disputed and Additional Facts**

Although the Debtor provided a copy of her 2003 tax return to the Plaintiff in connection with her loan application, the Debtor did not disclose her failure to pay her 2003 taxes and her resulting tax liability.  *Pl's. Br. in Opp'n to Def's. Mot. for Summ. J. and in Supp. of Pl's. Cross-Motion for Summ. J. (hereinafter "Pl's. Br.")*, Callahan Aff., ¶ 5.  The Plaintiff's loan application process required the Debtor to complete certain forms and submit information regarding her financial condition. *Pl's. Br.*, Callahan Aff., ¶ 3.  One of these forms was a written Confidential Attorney Financial Statement (hereinafter "Financial Statement"), which set forth the Debtor's assets and liabilities as of January 24, 2006.  *Adv. Pro. Compl. to Determine Dischargeability of Debt Pursuant to 11 U.S.C. § 523(a) (hereinafter "Compl.")*, ¶ 9. At the time the Debtor applied for a loan from the Plaintiff, the Debtor knew she had a liability to the IRS because she had not paid her 2003 taxes.  *Pl's. Br.*; *see Def's. Opp'n to Mot. to Compel Def.*

5

*to Execute a Release Authorizing the IRS to Disclose Records Regarding Def's. Tax Liabilities* (Docket No. 26) at ¶¶ 1-2. Where the Financial Statement required her to set forth "Taxes Payable," the Debtor responded: "0." Callahan Aff., ¶ 4, *see* Exhibit A. The Plaintiff maintains that it does not loan money to individuals with outstanding liabilities to the IRS and had the Plaintiff known that the Debtor had a significant liability to the IRS, the Plaintiff would not have approved her loan. *Pl's. Br.*, Callahan Aff., ¶ 6.

In September 2007, the Plaintiff filed a Summons and Notice of Motion for Summary Judgment in Lieu of Complaint in the Supreme Court of the County of Erie, State of New York, against the Debtor and her law firm, seeking, *inter alia*, compensatory damages in the amount of $162,252.50. *Compl.*, ¶ 19. On or about December 19, 2007 the court granted the Plaintiff's Motion for Summary Judgment in the sum of $162,252.50. *Compl.*, ¶ 20. The state court proceedings against the Debtor were stayed upon filing of the Debtor's bankruptcy petition. *Id*.

## Discussion

### A. Summary Judgment Standard

A court may grant summary judgment under Federal Rule of Civil Procedure 56(c), made applicable to adversary proceedings pursuant to Federal Rule of Bankruptcy Procedure 7056, "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." *Id*. At the summary judgment stage, the role of the court "is not to weigh evidence, but to determine whether there is a genuine issue for trial." *Knauss v. Dwek*, 289 F. Supp. 2D 546, 549 (D.N.J. 2003) (citing *Anderson v. Liberty, Inc.,* 477 U.S. 242, 249 (1986)). The court must construe facts and inferences in a light most favorable to the non-moving party. *See Am. Marine Rail NJ, LLC v. City of Bayonne*, 289

F. Supp. 2d 569, 578 (D.N.J. 2003) (citing *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587-88 (1986)). "Only evidence admissible at trial may be used to test a summary judgment motion. Thus, evidence whose foundation is deficient must be excluded from consideration." *Williams v. Borough of West Chester, Pa.*, 891 F.2d 458, 471 (3d Cir. 1989) (citations omitted).

The moving party must make an initial showing that there is no genuine issue of material fact. *See Knauss*, 289 F. Supp. 2d at 549 (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986)). The burden then shifts to the non-moving party to "make a showing sufficient to establish the existence of [every] element essential to the party's case, and on which that party will bear the burden of proof at trial." *Cardenas v. Massey*, 269 F.3d 251, 254-55 (3d Cir. 2001) (questioned on other grounds) (quoting *Celotex Corp.,* 477 U.S. at 322). The "mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact." *Anderson*, 477 U.S. at 247-48 (emphasis in original). An issue of fact is "genuine" if a reasonable juror could return a verdict for the non-moving party. *See id*. at 248. Furthermore, a material fact is determined by the substantive law at issue. *See Crane v. Yurick*, 287 F. Supp. 2d 553, 556 (D.N.J. 2003) (citing *Anderson*, 477 U.S. at 248). A fact is "material" if it might affect the outcome of the suit under governing law. *Id.* Disputes over irrelevant or unnecessary facts are insufficient to defeat a motion for summary judgment. *Anderson*, 477 U.S. at 248 (citation omitted).

However, even if material facts remain disputed, summary judgment may be proper if, after all inferences are drawn in the non-moving party's favor, the moving party is entitled to judgment as a matter of law. *Id.* at 248-50. Such a judgment is appropriate "as a matter of law"

when the non-moving party has failed to make an adequate showing on an essential element of his or her case, as to which he or she has the burden of proof. *See Celotex Corp.*, 477 U.S. at 322-23. When one moves the court for summary judgment, Federal Rules of Civil Procedure 54(c) and 56, taken together, permit the court to enter summary judgment on behalf of the non-movant, even if the non-movant has not filed a cross-motion for summary judgment. *See Peiffer v. Lebanon School Dist.*, 673 F. Supp. 147, 151-52 (M.D. Pa. 1987) (citation omitted). On the other hand, a court must deny a motion for summary judgment when a genuine issue of material fact remains to be tried, or where the moving party is not entitled to judgment as a matter of law.

Local Civil Rule 56.1 requires each side to "furnish a statement which sets forth material facts as to which there exists or does not exist a genuine issue." L. CIV. R. 56.1 (Gann Publishing 2008). Failure to file this statement constitutes grounds for denial alone. *See In re Mercedes-Benz Antitrust Litig.*, 364 F. Supp. 2d 468, 471-75 (D.N.J. 2005); *Comose v. N.J. Transit Rail Operations, Inc.*, 2000 U.S. Dist. LEXIS 20790, at *4, 2000 WL 33258658 (D.N.J. Oct. 6, 2000). However, if there is no evidence of bad faith, then it is within the court's discretion to overlook such failure and to decide the motion on the merits. *See Rosenberg v. JCA Assocs.*, 2007 U.S. Dist. LEXIS 23570, at *31-32, 2007 WL 1038893 (D.N.J. Mar. 30, 2007). Although both parties to the instant motions failed to comply with Local Civil Rule 56.1, they did provide orderly recitations of the facts at hand. Therefore, this Court will exercise its discretion and will decide the motion. *See Kee v. Camden County*, 2007 U.S. Dist. LEXIS 23637, at *16, 2007 WL 1038828 (D.N.J. Mar. 30, 2007) ("[T]he Court, having found no evidence of bad faith, concludes that both parties were equally lax in their compliance with the Local Civil Rules, . . . and the

Court [finds] it in the best interest of the parties and justice to adjudicate Defendant's motion. . . .").

**B.      Non-Dischargeability Under § 523(a)(2)(A)**

"The overriding purpose of the Bankruptcy Code is to relieve debtors from the weight of oppressive indebtedness and provide them with a fresh start. Exceptions to discharge are strictly construed against creditors and liberally construed in favor of debtors." *Ins. Co. of N. Am. v. Cohn (In re Cohn)*, 54 F.3d 1108, 1113 (3d Cir.1995) (citing *U.S. v. Stelweck*, 108 B.R. 488, 495 (E.D. Pa. 1989)). Section 523(a)(2)(A) of the Bankruptcy Code provides that debts for money, property, services, or credit obtained by "false pretenses, a false representation, or actual fraud, other than a statement respecting the debtor's or an insider's financial condition" are non-dischargeable. 11 U.S.C. § 523(a)(2)(A) (2007). According to the wording, legislative history, and case law of section 523(a)(2), subsection (A) is mutually exclusive from subsection (B), which provides a dischargeability exception for false financial statements. *Armbrustmacher v. Redburn*, 202 B.R. 917, 924 (Bankr. W.D. Mich. 1996) (citing *Eugene Parks Law Corp. Defined Benefit Pension Plan v. Kirsh (In re Kirsh)*, 973 F.2d 1454, 1457 (9th Cir. 1992)). "[S]tatements regarding the debtor's or an insider's financial condition are expressly excluded from the reach of subsection (A) and are only actionable under subsection (B)." *Id.* (citations omitted). Here, the Plaintiff alleges actual fraud under Subsection (A) as a basis for excepting its state court judgment from discharge in the instant adversary proceeding as well as an action under Subsection (B) for false financial statements and cross-moves for summary judgment on the same grounds.

The creditor bears the burden of proving non-dischargeability by a preponderance of the evidence. *See generally Grogan v. Garner*, 498 U.S. 279, 290, 111 S.Ct. 654, 112 L.Ed.2d 755

(1991). To satisfy non-dischargeability based on "actual fraud," the Third Circuit has repeatedly relied upon the *Poskanzer* test, which requires a showing that:

> (1) the Debtor obtained money, property or services through a material misrepresentation; (2) the Debtor, at the time of the transaction, had knowledge of the falsity of the misrepresentation or reckless disregard or gross recklessness as to its truth; (3) the Debtor made the misrepresentation with intent to deceive; (4) the Plaintiff reasonably relied on the representation; and (5) the Plaintiff suffered loss, which was proximately caused by the Debtor's conduct.

*De La Cruz v. Cohen (In re Cohen)*, 185 B.R. 180, 186 (Bankr. D.N.J. 1995) (citing *Trump Plaza Assocs. v. Poskanzer (In re Poskanzer)*, 143 B.R. 991, 999 (Bankr. D.N.J. 1992)), *aff'd*, 191 B.R. 599 (D.N.J.1996), *aff'd*, 106 F.3d 52 (3d Cir.1997); *cert. granted*, 521 U.S. 1152, 118 S.Ct. 30, 138 L.Ed.2d 1060 (1997), *aff'd* 523 U.S. 213, 118 S.Ct. 1212, 140 L.Ed.2d 341 (1998).

### *1. Material Misrepresentation*

The first element of actual fraud pursuant to Section 523(a)(2)(A) requires a material misrepresentation that includes words (written or oral), conduct, or omissions. *See Shaw v. Santos (In re Santos)*, 304 B.R. 639, 661 (Bankr. D.N.J. 2004). "[A] debtor's silence regarding material fact can constitute a false representation actionable under section 523(a)(2)(A)." *Wolstein v. Docteroff (In re Docteroff)*, 133 F.3d 210, 216 (3d Cir. 1997) (quoting *In re Van Horne*, 823 F.2d 1285, 1288 (8th Cir. 1987)). Such misrepresentation must be materially false, defined as "an important or substantial untruth." *In re Santos*, 304 B.R. at 662 (citing *Ins. Co. of N. Amer. v. Cohn (In re Cohn)*, 54 F.3d 1108, 1114 (3d Cir.1995)). In the context of a loan, an "untruth is material if, for example, it is considered important enough to influence a creditor's decision to extend credit." *In re Santos,* 304 B.R. at 662. However, "[m]ateriality is determined in part by the size of the discrepancy." *Enterprise Nat'l Bank of Atlanta v. Jones (In re Jones)*,

197 B.R. 949, 960 (Bankr. M.D. Ga. 1996) (citing *In re Cohn*, 54 F.3d at 1114). Clearly, when a debtor is silent regarding a fact, the silence can rise to the level of a material misrepresentation when it relates to something significant, under all of the circumstances involved.

In this case, the Defendant had an approximately $20,000 tax liability at the time the Plaintiff extended the initial loan. *Ltr. from Internal Revenue Service dated Nov. 26, 2008*. The Defendant was typically making $420 monthly payments in satisfaction of that liability, amounting to $5,040 per year. *Id*. She failed to specifically disclose this tax liability during the loan application process. However, she did provide an accurate profit and loss statement showing her previous year's expenses had been $259,372.79. *Def's. Br.*, Ex. B. After reviewing this and the balance of the loan application process, the Plaintiff gave the Defendant a total of $150,000 in loans. *Def's. Br.*, Ex. F and G. It is difficult to imagine that a $20,000 obligation is significant or material in light of almost $260,000 in expenses, collateral in excess of $1,000,000, and an initial $100,000 loan advance.

This case is similar to *Fairfax State Savings Bank v. McCleary*, where the debtor failed to disclose a specific $6,000 debt, but in a profit and loss statement disclosed roughly $448,000 in expenses. *Fairfax State Savings Bank v. McCleary* (*In re McCleary*), 284 B.R. 876, 886 (Bankr. N.D. Iowa 2002). The total loans involved in the case amounted to $292,500. *Id*. at 885. The court held that the undisclosed debt was not significant given the debtor's recent expenditures and size of the loans involved. *Id*. at 886. Therefore, the debtor's silence regarding the debt did not constitute a materially false statement. *Id.*

In the instant case, despite the Plaintiff's stated policy against loaning money to individuals with tax liability to the IRS, this Court does not find that the Defendant's silence as to the $20,000 tax liability was significant in influencing the Plaintiff's decision to lend given the

11

size of the tax liability, the amount of the loan, and the existence of substantial collateral. Here, the tax liability only amounted to a $5,040 annual expense, in comparison to the $150,000 total loan amount and $259,372.79 in total annual expenses. The undisclosed liability did not materially misrepresent the Defendant's annual expenses. Other financial comparisons are equally persuasive in considering the materiality of a misrepresentation. *See Park v. Chan (In re Chan)*, No. 06-00623ELF, 2008 WL 5428271 at *16 (Bankr. E.D. Pa. Dec. 31, 2008) (focusing on how a debtor's misrepresentation changed the appearance of an equity cushion that supplied an investor with a sense of security); *see also Lyndon Property Insurance Company v. Adams (In re Adams)*, 312 B.R. 576, 584-85 (Bankr. M.D. N.C. 2004) (considering how a debtor's misrepresentation incorrectly portrayed working capital).

The Plaintiff has failed to satisfy the first prong of 523(a)(2)(A). The Court does not find a material misrepresentation existed under the circumstances and the debt is dischargeable. However, in the interest of providing a complete discussion, the Court will also address the remaining issues relevant to nondischargeability under Section 523(a)(2)(A).

### *2. Justifiable Reliance*

Non-dischargeability under Section 523(a)(2)(A) requires a showing of "justifiable, but not reasonable, reliance." *Field v. Mans*, 516 U.S. 59, 73-75, 116 S.Ct. 437, 133 L.Ed.2d 351 (1995) (citing *see City Bank & Trust Co. v. Vann (In re Vann)*, 67 F.3d 277 (11th Cir.1995); *Eugene Parks Law Corp. Defined Benefit Pension Plan v. Kirsh (In re Kirsh)*, 973 F.2d 1454 (9th Cir. 1992)). In order to constitute justifiable reliance:

> "[T]he plaintiff's conduct must not be so utterly unreasonable, in the light of the information apparent to him, that the law may properly say that his loss is his own responsibility." This conclusion, however, does not mean that the reliance must be objectively reasonable. "Although the plaintiff's reliance on the

> misrepresentation must be justifiable, . . . this does not mean that his conduct must conform to the standard of the reasonable man." Justifiable reliance is gauged by "an individual stand[ard] of the plaintiff's own capacity and the knowledge which he has, or which may fairly be charged against him from the facts within his observation in the light of his individual case." Additionally, "it is only where, under the circumstances, the facts should be apparent to one of [the plaintiff's] knowledge and intelligence from a cursory glance, or he has discovered something which should serve as a warning that he is being deceived, that he is required to make an investigation of his own."

*Starr v. Reynolds (In re Reynolds),* 193 B.R. 195, 202 (quoting *In re Vann*, 67 F.3d at 283 (internal citations omitted)).

In this case, the Defendant failed to disclose her tax liability. However, the Plaintiff has neither shown nor alleged that it inquired into whether the Defendant had a tax liability other than through the Financial Statement which, as a basis for action, must be considered separately under a Section 523(a)(2)(B) analysis. Presumably, the Plaintiff argues that it justifiably relied upon the Defendant's silence that the Defendant had no tax liability.

Creditors have an affirmative obligation to request from borrowers facts that will influence their decision to extend credit. *See Chase Bank USA v. Park (In re Park),* 375 B.R. 153, 155 (Bankr. W.D. Pa. 2007) (finding that a credit card company that never asked debtor whether he had assets or other debts could not rely on debtor being solvent). Here, the Plaintiff is a sophisticated lending firm with a multi-step application process to determine the credit-worthiness of borrowers. *See Def's. Br.*, Ex. A, B, D, E & F. Clearly, the Plaintiff had the ability during the application process to collect all relevant information for its lending decision. In fact, it did a credit background check. The Plaintiff could have inquired as to whether the Defendant had outstanding tax liabilities by simply asking that question, especially if, as it now contends, it is an absolute factor in its decision process. Accordingly, any reliance that the

Plaintiff placed on the Defendant's silence was not justifiable and any reliance as to the false financial statement is not actionable under Section 523(a)(2)(A).

### *3. Knowledge of Falsity and Intent to Deceive*

The second and third elements of actual fraud require knowledge of falsity and an intent to deceive. *See In re Cohen,* 185 B.R. at 177. In the alternative, proving reckless indifference to the truth will satisfy these elements. *Id.* Using direct evidence to prove knowledge and intent is rarely possible since that analysis delves into the Defendant's subjective state of mind. *See In re Cohen*, 191 B.R. 599, 604 (D.N.J. 1996). Therefore, the Third Circuit allows for intent and knowledge to be inferred based on the "totality of the circumstances." *See id.* (citing *In re Cohn*, 54 F.3d at 1118-19); *In re Shaw*, 304 B.R. at 666 (focusing on "whether the debtor's actions 'appear so inconsistent with [his] self-serving statement of intent that the proof leads the court to disbelieve the debtor.'") (citations omitted).

The totality of the circumstances test is "fully applicable" to "proving scienter and intent" under either subsections 523(a)(2)(A) or (B). *See In re Cohen*, 191 B.R. 599, 605 (D.N.J. 1996). While the two subsections are mutually exclusive as causes of action, a totality of the circumstances analysis, by its nature, considers all relevant facts and circumstances. Thus, in conducting an analysis to determine knowledge of falsity and intent to deceive under subsection 523(a)(2)(A) and (B), a court can also consider false financial statements as well as false representations.

In this case, the Defendant provided extensive personal and business information along with authorizations for a background and credit check. *Def's. Br.*, Ex. D & E. However, she failed to disclose her tax liability and inaccurately listed her taxes payable as "0" on the Financial Statement. Callahan Aff., ¶ 4, *See* Ex. A.

Three cases where courts have inferred intent are useful for this analysis. In *Kleiman v. Goodman* (*In re Kleiman*), a debtor sought a loan that he promised to repay with an anticipated bonus. *Kleiman v. Goodman* (*In re Kleiman*), No. 07-3461 (MLC), 2008 WL 302388, at *9 (D.N.J. Jan. 30, 2008). The debtor knew "he would not receive any bonus if his employment were terminated before the year's end". *Id*. However, the debtor failed to convey this fact to the lender despite the lender's "repeated inquiries about the nature of the bonus." *Id.* Moreover, the debtor indicated his bonus was vested and that his bonus would be more than three times the value of the loan in a "worst-case scenario." *Id*. The court inferred "from the totality of the circumstances that the [d]ebtor made the false statement with the intent to deceive." *Id*.

In the second case, *In re Chan*, the debtor was "eager to find an investor to help save her" business. 2008 WL 5428271 at *17-18. In the process of dealing with the investor, the debtor failed to disclose additional liabilities in statements of estimated expenses and existing liabilities, and when prompted responded that the liability statement represented the only liabilities. *Id.* at 17-18. From these facts and circumstances the court determined that the debtor acted "intentionally and consciously." *Id.* at *18.

In *Lyndon Property Insurance Company v. Adams*, the debtor "had extensive experience in obtaining bonds." 312 B.R. at 586. In the course of a bond application, the debtor "understated the payables and dramatically overstated . . . working capital." *Id*. at 586. Additionally, he answered falsely in the application "that there were no pending liens or suits" against the business. *Id.* at 586. These circumstances established the debtor's intent to deceive the plaintiff.

In contrast to the preceding three cases is *Fairfax State Savings Bank v. McCleary,* where the court could not infer intent from the circumstances. *Fairfax State Savings Bank v. McCleary*

(*In re McCleary*) 284 B.R. 876 (Bankr. N.D. Iowa 2002). In that case the debtor did not disclose a debt during the loan application process. *Id.* at 889. However, "[t]he [b]ank was content with the limited information it received" and did not request a complete financial statement. *Id.* The court held that the bank failed to prove the debtor intended to deceive. *Id.* In making this holding the court noted that "factors persuasive on the intent issue" are a debtor's financial expertise and a pattern that clearly demonstrates purposeful conduct. *Id.*

The facts in the present case are not as forgiving as the facts in *McCleary*. Like the debtor in *McCleary,* the Defendant here did not disclose a debt. However, unlike *McCleary,* the Plaintiff in this case did request a financial statement, which the Defendant inaccurately completed. However, here the Plaintiff failed to demonstrate that the Defendant's conduct constituted or created a pattern of conduct intending to deceive. Such a pattern seems apparent in the *Goodman, Chan,* and *Adams* cases. Based upon the foregoing case law, this Court cannot infer from the evidence the requisite intent necessary to satisfy this factor.

### *4. Proximate Causation*

The last element of actual fraud requires the Plaintiff to suffer a loss and prove that such loss was proximately caused by the Defendant's conduct. *See In re Shaw*, 304 B.R. at 669. A creditor's loss will often foreseeably result from a debtor's representations that provide an inaccurate portrayal of the debtor's financial situation. However, that does not appear to be the case here. The Defendant's application listed her 2005 expenses as $259,372.79. In addition, her outstanding case list estimated she would receive $1,026,348.48 in future net legal fees. This alone supplied the Plaintiff with a 7-1 collateral to loan ratio. As stated previously, the Defendant was paying approximately $5,040 annually toward satisfying the tax liability. In comparison to the annual expenses and the collateral, the tax liability expense was insignificant

and cannot reasonably be expected to be material under these circumstances. Further, the Plaintiff made no showing that the loss is a reasonably foreseeable consequence of lending to a borrower with tax liability, and that relying on a misrepresentation indicating lack of tax liabilities provides legal causation. Accordingly, the creditor's loss could not reasonably have been expected to be the result of reliance on debtor's misrepresentation. Clearly, the Plaintiff has failed to prove non-dischargeability under Section 523(a)(2)(A) by a preponderance of the evidence.

**C.     Non-Dischargeability Under § 523(a)(2)(B)**

Section 523(a)(2)(B) of the Bankruptcy Code provides that debts for money, property services, or credit obtained by false financial statements are non-dischargeable. 11 U.S.C. § 523(a)(2)(A) (2007). The Plaintiff alleges false financial statements as a basis for excepting its state court judgment from discharge in the instant adversary proceeding and cross-moves for summary judgment on the same grounds.

Just as in the above 523(a)(2)(A) analysis, the creditor in a Section 523(a)(2)(B) action must prove non-dischargeability by a preponderance of the evidence. *Grogan v. Garner*, 498 U.S. 279, 286-91 (1991). The required elements of a claim under 523(a)(2)(B) are use of a statement in writing: (i) that is materially false; (ii) respecting the debtor's or an insider's financial condtion; (iii) on which the creditor to whom the debtor is liabile for such money, property, services, or credit reasonably relied; and (iv) that the debtor caused to be made or published with intent to deceive. *In re Cohn*, 54 F.3d at 1114.

*1. A Materially False Statement in Writing*

As stated previously, a misrepresentation must be materially false, defined as "an important or substantial untruth." *In re Santos*, 304 B.R. at 662 (citing *Ins. Co. of N. Amer. v.*

*Cohn (In re Cohn)*, 54 F.3d 1108, 1114 (3d Cir. 1995)). In the context of a loan, an "untruth is material if, for example, it is considered important enough to influence a creditor's decision to extend credit." *In re Santos,* 304 B.R. at 662. However, "[m]ateriality is determined in part by the size of the discrepancy." *Enterprise Nat'l Bank of Atlanta v. Jones (In re Jones)*, 197 B.R. 949, 960 (Bankr. M.D. Ga. 1996) (citing *In re Cohn*, 54 F.3d at 1114).

In this case, the Plaintiff argues that the Defendant made a false statement in writing when she presented her Confidential Attorney Financial Statement that inaccurately listed her taxes payable as "0." As noted earlier, despite the Plaintiff's statement regarding its policy, this Court cannot find that the inaccuracy of the Defendant's Financial Statement rose to the level of a material falsity – the numbers simply do not add up. The tax owed is not material to the total debt of the Debtor or the amount of the Plaintiff's loan, particularly when viewed in the light of a 7-1 collateral to loan ratio.

The Plaintiff has failed to prove a material misrepresentation simply because of the amount of the undisclosed tax liability and therefore the debt is dischargeable. However, in the interest of providing a complete discussion, the Court will also address the remaining issues relevant to nondischargeability under Section 523(a)(2)(B).

### *2. Respecting the Debtor's Financial Condition*

The Defendant did not dispute that the Financial Statement concerned the Debtor's financial condition. Accordingly, the Plaintiff has satisfied this element.

### *3. Reasonable Reliance*

"The reasonableness of a creditor's reliance under § 523(a)(2)(B) is judged by an objective standard, i.e., that degree of care which would be exercised by a reasonably cautious person in the same business transaction under similar circumstances." *In re Cohn*, 54 F.3d at

1117.  "This requirement is in contrast with the "justifiable reliance" required by § 523(a)(2)(A)."  *In re Chan*, 2008 WL 5428271, at *17 n.50 (citing *Field v. Mans*, 516 U.S. 59 (1995)).  The court in *Cohn* provided three factors to evaluate whether a creditor reasonably relied upon a the debtor's financial statement:

> (1) the creditor's standard practices in evaluating credit-worthiness (absent other factors, there is reasonable reliance where the creditor follows its normal business practices); (2) the standards or customs of the creditor's industry in evaluating credit-worthiness (what is considered a commercially reasonable investigation of the information supplied by the debtor); and (3) the surrounding circumstances existing at the time of the debtor's application for credit (whether there existed a "red flag" that would have alerted an ordinarily prudent lender to the possibility that the information is inaccurate, whether there existed previous business dealings that gave rise to a relationship of trust, or whether even minimal investigation would have revealed the inaccuracy of the debtor's representations).

*In re Cohn*, 54 F.3d at 1117 (citing See *Coston v. Bank of Malvern (In re Coston)*, 991 F.2d 257, 261 (5th Cir. 1993) (en banc).

The Plaintiff supplied no facts to satisfy the *Cohn* three-factor test and support a finding of reasonable reliance.  Given the lack of persuasive evidence, this court cannot find that the Plaintiff reasonably relied on the Defendant's inaccurate Financial Statement.

### *4. Intent to Deceive*

"[A] debtor will rarely, if ever, admit that deception was his purpose," which makes "this fourth element of § 523(a)(2)(B) . . extremely difficult for a creditor to prove by direct evidence."  *In re Cohn*, 54 F.3d at 1118.  As an alternative, courts can infer intent to deceive "from the totality of the circumstances, including the debtor's reckless disregard for the truth." *Id*. at 1119.

As stated previously, this totality of the circumstances analysis is the same analysis used to infer knowledge of falsity and intent to deceive under Section 523(a)(2)(A). Under the circumstances herein, the Court cannot find that the Defendant acted with the requisite intent to deceive and thus the Plaintiff has not satisfied this element.

## Conclusion

For the reasons stated above, the Defendant's motion for summary judgment is granted and the Plaintiff's cross-motion for summary judgment is denied. An Order in conformance with this Opinion has been entered by the Court and a copy is attached.

*/s/ Donald H. Steckroth*
_____
DONALD H. STECKROTH
UNITED STATES BANKRUPTCY JUDGE

Dated: June 17, 2009